Amy P. Lally (SBN 198555)
Shawn C. Luna (SBN 266526)
Christopher S. Munsey (SBN 267061)
Laura L. Richardson (SBN 288954)
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

Attorneys for Gabriel Barroso and Margarita Barroso

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re | ) Case No. 2:14-bk-15837-RK |
| MONICA NICOLE OLIVAS, | ) Chapter 7 |
| Debtor. | ) Adv. Pro. Case No.: |
| | ) **COMPLAINT OBJECTING TO DISCHARGEABILITY OF PARTICULAR DEBT OWED TO GABRIEL AND MARGARITA BARROSO** |
| | ) [Hearing date to be set by summons] |

1

ACTIVE 202367962

Plaintiffs Gabriel Barroso and Margarita Barroso (the "Barrosos" or "Plaintiffs"), as for their Complaint against Defendant, Monica Nicole Olivas, allege as follows:

## JURISDICTION AND VENUE

1. This action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (I), and (O).

2. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. § 523. Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

## SUMMARY

3. This action arises out of Ms. Olivas' participation in a small, but sophisticated Ponzi scheme run by Ms. Olivas' boyfriend Leonardo Garcia ("Mr. Garcia") to defraud the Barrosos of their real estate investment. Not only did Ms. Olivas know of the scheme and fail to correct Mr. Garcia's misrepresentations or disclose his fraudulent intent to the Barrosos, but Ms. Olivas actively facilitated the scheme by executing documents central to the efforts to avoid returning the Barrosos' investment.

4. The scheme, and Ms. Olivas' participation in the scheme, can be summarized as follows: Ms. Olivas and Mr. Garcia (for whom Ms. Olivas worked) aggressively marketed an entity called Casas & Estates on the radio to prospective investors as a company offering legitimate-sounding real estate investment opportunities with a promise of regularly paid high returns. The Barrosos were induced to invest $50,000 with Ms. Olivas and Mr. Garcia, with the promise of 25% annual interest and a security interest in real property located at 9437 Karen Avenue, California City, CA (the "Karen Avenue Property"). At various times, the Barrosos sought to withdraw their investment; each time, they were induced by Mr. Garcia and Ms. Olivas to reinvest with the promise that their investments would continue to be secured by the Karen Avenue Property.

5. Neither Ms. Olivas nor Mr. Garcia properly recorded the deeds, however, depriving the Barrosos of their security interest. Ms. Olivas signed notes and deeds in favor of

the Barrosos knowing that neither she nor Mr. Garcia intended to record the deeds to provide the Barrosos with their agreed-upon security. Ms. Olivas did not disclose this information to the Barrosos. In fact, Mr. Garcia transferred the Karen Avenue Property to Ms. Olivas for no consideration. Ms. Olivas subsequently sold the Karen Avenue Property without informing the Barrosos, thereby wrongfully depriving the Barrosos of the security for their investment, and used the proceeds to purchase in her own name property located at 7513 South San Pedro Street, Los Angeles, California (the "San Pedro Property").

6. On or about January 1, 2008, Ms. Olivas and Mr. Garcia's scheme collapsed, and they failed to return any of the Barrosos' initial investment or promised interest. As a result, the Barrosos filed a complaint against Ms. Olivas and Mr. Garcia in November, 2011, and subsequently amended that complaint in August, 2012 (the "Prepetition Complaint"). The Prepetition Complaint asserted causes of action for fraud, fraudulent conveyance, alter ego, breach of contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, and imposition of constructive trust.

7. Thereafter, on or about September 28, 2012, Ms. Olivas, Mr. Garcia and the Barrosos entered into a settlement agreement (the "Settlement Agreement") to resolve the matters addressed in the Prepetition Complaint. Pursuant to the Settlement Agreement, Ms. Olivas and Mr. Garcia agreed to pay the Barrosos $50,000 by April 8, 2013. To secure payment of this settlement amount, Ms. Olivas executed a deed of trust related to the San Pedro Property in favor of the Barrosos. Although the parties contemplated that the settlement amount would be paid from the proceeds of the sale of the San Pedro Property—which Ms. Olivas and Mr. Garcia represented would be put up for sale at the time of the Settlement Agreement—the San Pedro Property was not even listed for sale until mere weeks before payment was due under the Settlement Agreement. Upon the failure of Ms. Olivas and Mr. Garcia to pay the settlement amount, the Barrosos obtained a judgment against Ms. Olivas for $50,821.92 plus 10% interest per annum, accruing on and after June 7, 2013 (the "Prepetition Judgment"). Additional enforcement actions were stayed by Ms. Olivas' and Mr. Garcia's subsequent bankruptcy filings.

3

8. The Barrosos bring this action to contest the dischargeability of the debt owed to them under the Prepetition Judgment (listed in Ms. Olivas Schedule D filed in this bankruptcy proceeding [Doc. No. 10]), which itself arises from the underlying fraud claims asserted in the Prepetition Complaint and resolved through the Settlement Agreement).

## THE PARTIES

9. Plaintiff Gabriel Barroso ("Mr. Barroso") is an individual residing in Riverside County, California.

10. Plaintiff Margarita Barroso ("Mrs. Barroso") is an individual residing in Riverside County, California.

11. On information and belief, Defendant Monica Nicole Olivas is an individual residing in Los Angeles County, California.

## GENERAL ALLEGATIONS

**I.    The Original Investment**

12. In or about 2005, Casas & Estates, through Mr. Garcia, heavily advertised real estate investment opportunities in California City, California on AM radio channel 860 every Thursday and Saturday. In the advertisement, Mr. Garcia promised to pay interest to investors every six (6) months on investments of $50,000 or more, at the rate of 25% per year.

13. The Barrosos, a married couple in their late sixties, listened regularly to the Casas & Estates advertisements on the radio, and in early February 2006 contacted Mr. Garcia about the investment opportunity. Mr. Garcia invited the Barrosos to the Casas & Estates office to explain the purported investment opportunity in more detail.

14. On or about February 16, 2006, the Barrosos met with Mr. Garcia at the office of Casas & Estates. The stated purpose of the investment was to provide "construction" money for specific parcels of property that Mr. Garcia and/or his alter ego Casas & Estates were acquiring or had acquired. Mr. Garcia solicited $50,000 from the Barrosos based on the assurance that in six months, on August 16, 2006, the Barrosos would receive their principal plus interest at the rate of 25% per annum. Although the contract speaks in terms of "25% per

4

annum," because interest was to be paid at the end of six months, the expected return was actually $6,250. Thus, at the end of the six months the Barrosos would receive $6,250, representing half of the yearly expected interest. At the meeting, the Barrosos signed an investment contract to this effect and tendered their investment.

15. The investment was arranged and solicited through representations to the Barrosos that the investment would be secured by a recorded assignment of beneficial interests in the Karen Avenue Property.

16. On information and belief, Mr. Garcia purchased the Karen Avenue Property on or about October 7, 2005, and title to the Karen Avenue Property was thereafter held in Mr. Garcia's name.

17. Thus, on or about March 2, 2006, the Barrosos were presented with an executed note and trust deed. Mr. Garcia executed a Note Secured by a Deed of Trust (the "March 2006 Note") for the principal sum of $50,000, with $6,250 in interest to be paid on or before August 17, 2006.

18. Concurrently with the signing of the March 2006 Note, on or about March 2, 2006 Mr. Garcia executed a Short Form Deed of Trust and Assignment of Rents (the "2006 Deed") purporting to grant the Barrosos a secured interest in the Karen Avenue Property. The 2006 Deed stated that Gabriel and Margarita Barroso were the trustees and beneficiaries.

19. At all times relevant herein, the Barrosos reasonably relied upon Mr. Garcia and Ms. Olivas for expertise and to ensure that the trust deed investment transaction was correct and legitimate, and properly executed and recorded.

20. Unbeknownst to the Barrosos, Mr. Garcia failed to record the 2006 Deed, leaving the Barrosos as unsecured creditors in a scheme to defraud them of their savings. On or about August 18, 2006, the Barrosos received a check from Mr. Garcia in the amount of $6,250 for interest on their initial investment. However, the Barrosos did not receive their original investment back. Instead, Mr. Garcia discouraged the Barrosos from withdrawing their capital.

5

21. Ms. Olivas was aware of the circumstances of the Barrosos' initial investment as she worked with Mr. Garcia to help with the initial contract and served as a witness to the meetings.

## II. The First Reinvestment

22. Thus, on or about August 18, 2006, the Barrosos rolled over their $50,000 investment. Mr. Garcia assured the Barrosos that the purpose and procedure as set forth in the initial investment meeting would be the same for subsequent investments. The Barrosos were provided an executed Note Secured by a Deed of Trust (the "August 2006 Note").

23. The August 2006 Note provided that on or before February 18, 2007, Mr. Garcia would pay to Gabriel and Margarita Barroso the sum of $50,000 plus interest at 25% per annum in the amount of $6,250. The August 2006 Note was executed by Mr. Garcia.

24. Ms. Olivas explained the terms of the August 2006 Note to the Barrosos. Ms. Olivas was aware that although Mr. Garcia signed the August 2006 Note to secure the Barrosos' investment, he did not intend to return the Barrosos' investment. Ms. Olivas was also aware that Mr. Garcia did not intend to record the 2006 Deed. Ms. Olivas failed to disclose any of this information to the Barrosos.

## III. The Second Reinvestment And Transfer Of The Karen Avenue Property To Ms. Olivas

25. On or about February 18, 2007, the Barrosos received a check from Mr. Garcia in the amount of $6,250 for interest on their continued investment. However, the Barrosos did not receive their original investment back. Instead, Mr. Garcia again encouraged the Barrosos to refrain from withdrawing their capital and to reinvest.

26. Thus, on or about February 18, 2007, the Barrosos rolled over their $50,000 investment. Mr. Garcia again assured the Barrosos that the purpose and procedure as set forth in the initial investment meeting would be the same for subsequent investments. The Barrosos and Mr. Garcia executed an investment contract on Casas & Estates letterhead (the "Investment Contract"), which provided that the Barrosos would receive interest at the rate of 25% back on their original investment of $50,000 within a twelve-month period. The Investment

6

Contract was set to expire on February 18, 2008. A true and correct copy of said Investment Contract is attached hereto, marked as Exhibit "1," and incorporated herein by reference.

27. On or about August 23, 2007, Mr. Garcia transferred the Karen Avenue Property to Ms. Olivas. Mr. Garcia received no value whatsoever in return for the Karen Avenue Property. On information and belief, the transfer was made with Mr. Garcia's and Ms. Olivas' actual intent to hinder, delay and/or defraud the Barrosos, and the transfer left Mr. Garcia insolvent and without assets sufficient to cover his business obligations, including with respect to his obligations to the Barrosos.

28. Neither Ms. Olivas nor Mr. Garcia informed the Barrosos of the transfer of the Karen Avenue Property to Ms. Olivas for no value.

**IV.  The Breach Of The Investment Contract And Ms. Olivas Continued Participation In The Scheme To Defraud The Barrosos**

29. On or about January 1, 2008, the Barrosos contacted Mr. Garcia to inform him they did not want to reinvest their initial investment for $50,000 at the end of the current contract period. Mr. Garcia bewailed and bemoaned, claiming that the real estate market was down, and therefore he did not intend to perform according to the Investment Contract. Thus, Mr. Garcia informed the Barrosos that not only would he not pay them any of their interest, but he would also not return their original investment.

30. On February 18, 2008, Defendants failed to repay the initial investment plus 25% interest, thus resulting in a breach under the Investment Contract.

31. The breach continuing, Defendants sought to satisfy their indebtedness by offering an improper tender of another Note Secured by a Deed of Trust (the "March 2008 Note") on or about March 13, 2008, in the principal sum of $50,000, executed by Jennifer Hamby ("Ms. Hamby") in favor of Mr. Barroso. The Barrosos had never met Ms. Hamby, nor did Mr. Garcia explain Ms. Hamby's role in the purported investment.

32. Concurrently with the making, execution and delivery of the March 2008 Note, Ms. Hamby executed a Short Form Deed of Trust and Assignment of Rents (the "March 2008 Deed") for a vacant lot in California City, California. The March 2008 Deed was

7

purportedly given by Mr. Garcia to the Barrosos as security for repayment of the March 2008 Note.

33.  Unbeknownst to the Barrosos, Mr. Garcia and Ms. Hamby never recorded the March 2008 Deed.  In fact, at the time Mr. Garcia and Ms. Hamby made, executed and delivered to the Barrosos the March 2008 Note and Deed, Ms. Hamby, as trustor, did not have the right, power or authority to grant and convey to the Barrosos a deed of trust lien on the subject parcel of real property.

34.  The Barrosos rejected the improper tender of the March 2008 Deed and Note, and on or about April 11, 2008, the Barrosos sent a letter to Mr. Garcia demanding immediate and full repayment of the investment and interest.

35.  The prior offer having been rejected and the breach still existing, on or about July 3, 2008, the Barrosos met with Ms. Olivas and Mr. Garcia in an effort to try to satisfy the debt. Mr. Garcia introduced Ms. Olivas as his "common-law wife."  In an attempt to try and satisfy the debt, Ms. Olivas executed a Note Secured by a Deed of Trust, in favor of the Barrosos' son, Luis Barroso, (the "July 2008 Note") for the Barrosos' original investment of $50,000, with an additional $10,000 in interest to be paid on or before July 3, 2017.  The July 2008 Note provided for payments in monthly installments of $500 on the first day of each month.  The July 2008 Note further provided that in the event any payment is not paid within five days of the due date, the trustor shall pay an additional 5% interest on each payment due.  A true and correct copy of said July 2008 Note is attached hereto, market as Exhibit "2" and incorporated herein by reference.

36.  Concurrently with the signing of the July 2008 Note, Ms. Olivas executed a Short Form Deed of Trust and Assignment of Rents in favor of the Barrosos' son, Luis Barroso (the "July 2008 Deed").  The July 2008 Deed was executed by Ms. Olivas on July 3, 2008, purporting to grant the Barrosos a secured interest in the Karen Avenue Property.  A true and correct copy of said July 2008 Deed is attached hereto, marked as Exhibit "3" and incorporated herein by reference.

ACTIVE 202367962

37. Mr. Garcia represented to the Barrosos that Ms. Olivas was signing the July 2008 Note and July 2008 Deed because Ms. Olivas, rather than Mr. Garcia, would be making the payments under the agreement.

38. Although Ms. Olivas was present when Mr. Garcia represented to the Barrosos that their investment would be secured by the Karen Avenue Property, Ms. Olivas never intended to record the deed.

39. At all times herein relevant, the Barrosos reasonably relied upon Ms. Olivas and Mr. Garcia for expertise and to make certain that the July 2008 Deed was correct and legitimate, and properly executed and recorded.

40. The Barrosos received seven payments from Ms. Olivas between July 2008 until February 2009, when the last payment was received. Mr. Garcia gave verbal notice to the Barrosos that neither he nor Ms. Olivas intended to perform further under either the Investment Contract or the July 2008 Note until the Karen Avenue Property was sold.

41. As of March 1, 2009, Ms. Olivas and Mr. Garcia failed to pay their monthly installments in partial satisfaction of the debt, resulting in a default under the July 2008 Note.

42. Upon information and belief, Mr. Garcia and Ms. Olivas failed to record the July 2008 Deed, and on March 4, 2010, Ms. Olivas sold the Karen Avenue Property to a bona fide purchaser for value. Ms. Olivas never informed the Barrosos of her intention, or sought their permission, to sell the Karen Avenue Property.

43. Upon information and belief, Ms. Olivas used the proceeds from the sale of the Karen Avenue Property to invest in the San Pedro Property, to which she took and held title in her own name.

44. The breach of the Investment Contract continuing and not being fully satisfied by the July 2008 note which was also breached, on or about February 11, 2011, the Barrosos sent a letter to Mr. Garcia demanding the immediate and full repayment of the amount

ACTIVE 202367962

outstanding under the Investment Contract, which was $46,5000, not including the interest of $10,000 and the 5% late charge.

**V.     The Prepetition Complaint And Settlement Agreement**

45.     On November 16, 2011, the Barrosos filed a complaint for damages against Ms. Olivas, Mr. Garcia, and certain other related entities in the California Superior Court for the County of Los Angeles (Case No. BC473634). On August 20, 2012, the Barrosos filed an amended complaint to add additional counts and to conform the factual allegations to the facts elicited through the initial phase of discovery.

46.     On or about September 28, 2012, the Barrosos, Ms. Olivas, and Mr. Garcia entered into the Settlement Agreement resolving all of their disputes related to the Prepetition Complaint. Under the Settlement Agreement, Ms. Olivas and Mr. Garcia agreed to pay $50,000 by the sooner of April 8, 2013 or five days after the close of escrow on the San Pedro Property. Ms. Olivas executed a deed of trust on the San Pedro Property in favor of the Barrosos.

47.     Ms. Olivas and Mr. Garcia represented to the Barrosos that they intended to sell the San Pedro Property to generate the funds necessary to pay the $50,000 settlement amount. On information and belief, Ms. Olivas did not intend to pay the $50,000 settlement amount, and, contrary to the representations made to the Barrosos, did not attempt to sell the San Pedro Property until March 15, 2013, just a matter of weeks before the settlement payment was due.

48.     On May 10, 2013, after the failure of either Ms. Olivas or Mr. Garcia to pay the settlement amount, the Barrosos sought to enforce the Settlement Agreement. On September 11, 2013, the state court entered the Prepetition Judgment against Ms. Olivas pursuant to section 664.6 of the California Code of Civil Procedure, stating that Ms. Olivas would be liable to the Barrosos for $50,821.92, and interest on that sum at 10% per annum accruing on and after June 7, 2013. A true and correct copy of the Prepetition Judgment is attached hereto as Exhibit "4" and incorporated herein by reference.

ACTIVE 202367962

49. Prior to the completion of attachment proceedings, Ms. Olivas filed this bankruptcy petition.

## CAUSES OF ACTION

**VI.    First Claim For Relief – 11 U.S.C. § 523(a)(2)(A)**

50. The Barrosos re-allege and fully incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein.

51. Ms. Olivas participated in the scheme to defraud the Barrosos of their investment through false pretenses, a false representation, or actual fraud.

52. Prior to entering into the Investment Contract, and for the duration of the Barrosos' investment, Mr. Garcia represented that the investment would be secured by recorded, beneficial interests in real property. The security interest was meant to induce the Barrosos into investing money with Mr. Garcia, Ms. Olivas and Casas & Estates. Ms. Olivas was present at the time these representations were made and aware of such representations.

53. Neither Ms. Olivas nor Mr. Garcia recorded the deeds. Ms. Olivas did not intend to record the deeds, and she was aware that Mr. Garcia had no intention of recording the deeds. Ms. Olivas failed to disclose any of this material information to the Barrosos.

54. Mr. Garcia transferred the Karen Avenue Property (which was supposed to secure the Barrosos' investment) to Ms. Olivas for no value. Ms. Olivas failed to disclose any of this material information to the Barrosos.

55. In addition to the fraudulent misrepresentations described above, Ms. Olivas engaged in affirmative fraudulent conduct by executing notes evidencing the debts owed to the Barrosos and deeds purporting to secure such debt.

56. Ms. Olivas' participation in this scheme continued even after the Barrosos filed the Prepetition Complaint. As part of the Settlement Agreement, Ms. Olivas represented that she intended to sell the San Pedro Property to generate the funds to pay the amount required under the Settlement Agreement. Nevertheless, Ms. Olivas failed to take any steps to market and sell the San Pedro Property until March 15, 2013.

ACTIVE 202367962

11

57. At all times, the Barrosos reasonably relied on the representations made by Ms. Olivas and Mr. Garcia regarding their security interest in the Karen Avenue Property. The Barrosos would not have invested with Ms. Olivas, Mr. Garcia, and Casas & Estates if they knew they were not receiving a security interest in the Karen Avenue Property.

58. As a direct and proximate result of the foregoing conduct, the Barrosos have been damaged by the failure of Ms. Olivas and Mr. Garcia to (i) return the initial $50,000 principal investment, and (ii) properly record the deed on the Karen Avenue Property, preventing the Barrosos from foreclosing on that property.

59. In sum, Ms. Olivas' made false and misleading representations that she knew to be false, and further knew that she was omitting material facts, the absence of which would mislead the Barrosos. Ms. Olivas nonetheless made said false representations, and/or failed to provide the Barrosos with necessary material facts. The Barrosos were ignorant of the falsity thereof and/or the true facts, and reasonably believed the representations to be true, complete, and honestly made under the circumstances. Absent said representations and failures to provide material facts, the Barrosos would not have entered into the Investment Contract and/or made the payments provided therein.

60. The foregoing conduct of Ms. Olivas and Mr. Garcia constituted intentional misrepresentations designed to deprive the Barrosos of their money, contractual and legal rights, and/or otherwise intentionally to cause the Barrosos injury.

## REQUEST FOR RELIEF

61. Wherefore, the Barrosos respectfully request this Court (i) deny Ms. Olivas a discharge of any debt claimed by the Barrosos, specifically including the debt listed on Ms. Olivas Schedule D as evidenced by the Prepetition Judgment; and (ii) grant such other relief as the Court finds just and equitable.

ACTIVE 202367962

| | | |
|---|---|---|
| 1 | DATED: July 7, 2014 | SIDLEY AUSTIN LLP |

By:/s/ Shawn C. Luna

Amy P. Lally (SBN 198555)
Shawn C. Luna (SBN 266526)
Christopher S. Munsey (SBN 267061)
Laura L. Richardson (SBN 288954)
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

Attorneys for Gabriel Barroso and Margarita Barroso

ACTIVE 202367962

13

FORM B104 (08/07)                                                                              2007 USBC, Central District of California

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Page 2) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|
| **PLAINTIFFS** <br> Gabriel Barroso and Margarita Barroso | **DEFENDANTS** <br> Monica Nicole Olivas |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.) <br> Amy P. Lally, Shawn C. Luna, Christopher C. Munsey, and Laura L. Richardson <br> SIDLEY AUSTIN LLP 555 West Fifth Street, Suite 4000 Los Angeles, CA 90013 <br> Phone: (213) 896-6000 | **ATTORNEYS** (If Known) <br> Luis G. Torres <br> 1712 W. Beverly Blvd., Suite 202 <br> Phone: (323) 887-1150 |
| **PARTY** (Check One Box Only) <br> ☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin <br> ☒ Creditor ☐ Other <br> ☐ Trustee | **PARTY** (Check One Box Only) <br> ☒ Debtor ☐ U.S. Trustee/Bankruptcy Admin <br> ☐ Creditor ☐ Other <br> ☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Determination of non-dischargeability of particular debt pursuant to 11 U.S.C. § 523(a)(2)

**NATURE OF SUIT**
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
[1] 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought | |

FORM B104 (08/07), page 2                                                                                    2007 USBC, Central District of California

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES ||||
|---|---|---|---|
| **NAME OF DEBTOR** <br> Monica Nicole Olivas ||| **BANKRUPTCY CASE NO.** <br> 2:14-bk-15837 |
| **DISTRICT IN WHICH CASE IS PENDING** <br> C.D. Cal. | **DIVISIONAL OFFICE** <br> Los Angeles || **NAME OF JUDGE** <br> Judge Robert Kwan |
| RELATED ADVERSARY PROCEEDING (IF ANY) ||||
| **PLAINTIFF** | **DEFENDANT** || **ADVERSARY PROCEEDING NO.** |
| **DISTRICT IN WHICH ADVERSARY IS PENDING** | **DIVISIONAL OFFICE** || **NAME OF JUDGE** |
| **SIGNATURE OF ATTORNEY (OR PLAINTIFF)** <br> *[signature]* ||||
| **DATE** <br> 7/7/14 ||| **PRINT NAME OF ATTORNEY (OR PLAINTIFF)** <br> Shawn Luna |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendents.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.